

# NUMBER 13-19-00650-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHRISTOPHER MICHAEL IRISH,                                    Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

On appeal from the 36th District Court
of San Patricio County, Texas.

# MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Tijerina**
**Memorandum Opinion by Justice Hinojosa**

A trial court convicted appellant Christopher Michael Irish of continuous family violence assault, a third-degree felony. *See* TEX. PENAL CODE ANN. § 25.11(e). After Irish pleaded guilty pursuant to a plea agreement, the trial court sentenced him to five years' deferred adjudication community supervision. Two years later, the State filed a motion to adjudicate. The trial court found the State's allegations true and sentenced Irish to ten

years' incarceration at the Texas Department of Criminal Justice—Institutional Division. *See id*. § 12.34. By one issue, Irish contends there was legally insufficient evidence to support the trial court's findings of true. We affirm.

## I. BACKGROUND

### A. The Initial Offense

On March 28, 2017, a grand jury indicted Irish for continuous family violence assault. *See id*. § 25.11(e). The indictment set forth that Irish struck his wife, Krysta Jeffrey, "with a rake" or with his "fist or hands" on November 20, 2016. After pleading guilty pursuant to a plea agreement, the trial court sentenced Irish to five years' deferred adjudication on December 7, 2017. The court admonished Irish regarding the conditions of his community supervision, which included committing no further offenses against the State of Texas.

### B. The State's Motion to Adjudicate

Two years later, on May 1, 2019, the State filed a motion to adjudicate guilt. In its motion, the State alleged Irish violated four conditions of his deferred adjudication community supervision:

1. On or about the 6th day of August, 2018, in the County of Nueces, State of Texas, the said Christopher Michael Irish, did then and there cause bodily injury to J.E.R.,[1] a child 14 years of age or younger[,] by hitting her with his open hand;

2. On or about the 6th day of August, 2018, in the County of Nueces, State of Texas, the said Christopher Michael Irish, did then and there cause

---

[1] To protect the identity of the minor child, we refer to her by her initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(a).

bodily injury to J.E.R., a child 14 years of age or younger[,] by punching her belly with his closed hand;

3. On or about the 6th day of August, 2018, in the County of Nueces, State of Texas, the said Christopher Michael Irish, did then and there cause bodily injury to J.E.R., a child 14 years of age or younger, by pushing her causing her to fall and twisting her arms; and

4. On or about the 6th day of August, 2018, in the County of Nueces, State of Texas, the said Christopher Michael Irish, did then and there cause bodily injury to J.E.R., a child 14 years of age or younger, by hitting on top of the head with phone charger.

J.E.R. is Irish's biological daughter. At the hearing on the motion to adjudicate, the State abandoned counts (1) and (2) because a witness, J.E.R.'s babysitter Mikayla Trevino, could not testify due to a family emergency. The State proceeded on counts (3) and (4). Irish entered a "not true" plea on both allegations, and the State commenced with its case.

The State called Mallory Ladny, a caseworker with the Texas Department of Family and Protective Services (the Department). Ladny testified that J.E.R. was four or five years old at the time of offenses alleged in the motion to adjudicate. Ladny acknowledged that J.E.R. had previously accused her father of sexual abuse on three separate occasions, but that the Department had administratively closed those cases after failing to substantiate the outcries. Ladny explained that a case being "ruled out" did not mean the claims were false; it meant there was no proof to corroborate them. Ladny also testified that there was an open case with the Department out of Travis County, Texas, against Irish regarding J.E.R. Ladny reported that there was a mediated settlement agreement in place wherein Irish agreed to relinquish parental rights of J.E.R. in J.E.R.'s "best interests."

3

Shawn Barnes, a police officer for the City of Corpus Christi, testified that on August 6, 2018, he responded to a call made by Trevino regarding possible child abuse. When Barnes arrived at the home, he saw four-year-old J.E.R. with "15 to 20 bruises on her right arm that were about the size of quarters . . . ." He testified that some of the bruises looked fresh with the skin raised, while others were already healing. Barnes also noted that J.E.R. looked malnourished and had decaying teeth. He referred the case to the Department and J.E.R. was taken to Driscoll Children's Hospital.

The State also called Detective Wenzel, an investigator employed by the Corpus Christi Police Department's Family Violence Bureau and Child Crimes Unit. Wenzel reviewed J.E.R.'s videotaped interview with the Child Advocacy Center regarding the August 6, 2018 call. He also visited the home where J.E.R. lived with her father in an R.V. park near water. He noted in his report that J.E.R. said her father told her, "he was going to throw her in the water and nobody would be able to hear her." As part of his investigation, Wenzel also reviewed a prior instance from April 2018 where J.E.R. claimed her father had thrown a chair at her.

On cross-examination, the defense had Wenzel read the following from a police report from an April 2018 incident involving J.E.R. and her father:

> J.E.R. did not promise to tell the truth during the interview when asked if she would on two occasions. J.E.R. said she went to the hospital. She said that they took a picture of her knee and showed her knee. She said that it came from being scratched. She pointed out another mark and said she got that from falling. She said she doesn't see her dad anymore but would not say why. J.E.R. showed another bruise but said she didn't know how she got it. On a body diagram J.E.R. named the various body parts. J.E.R. said she had a bruise on her eye that came from jumping off the bed. J.E.R. made no outcry of physical or sexual abuse.

4

I was told that the injuries the victim had were nonspecific and not indicative of physical abuse. In light of this and the lack of an outcry at Driscoll Children's Hospital or the CACCB, this case will be made inactive and referred to CPS. If new evidence comes to light then it can be re-opened at that time.

Finally, the State called Sandra Pardo, a registered nurse who works for the Driscoll Children's Hospital Child Abuse Resource Evaluation (CARE) Team. Pardo testified she has medically examined over a thousand children in her twenty-four-year career. Pardo examined J.E.R. on August 6, 2018 for suspected physical abuse. Pardo performed a body surface examination and found twenty-six different injuries, most of which were bruises. The bruises were located on J.E.R.'s left temple, cheeks, chin, back, right arm, abdomen, legs, and feet. J.E.R. told Pardo, "Daddy pushed me and I fell on the brown stairs outside. He was mad and mean. He twisted my arm." J.E.R. also told Pardo that Irish twisted her right arm "because he was not nice. He hit me with a charger on the head." J.E.R. demonstrated the twisting to Pardo by grabbing her own right arm with her left hand.

The trial court found that allegations (3) and (4) were true and sentenced Irish to ten years' incarceration. This appeal ensued.

## II.    STANDARD OF REVIEW & APPLICABLE LAW

The appellate court reviews a judgment revoking community supervision for an abuse of discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). An order revoking community supervision must be supported by a preponderance of the evidence, meaning the greater weight of the credible evidence that would create a reasonable belief that the defendant had violated a condition of probation. *Id*. at 864–65.

5

The State may prove the elements of an offense by either direct or circumstantial evidence, and "circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). The trial judge is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Hacker,* 389 S.W.3d at 865.

### III.   ANALYSIS

By his sole issue, Irish contends there was legally insufficient evidence to support the trial court's findings of true on counts (3) and (4). In particular, Irish argues that the only evidence against him is the word of J.E.R. He stresses the fact that J.E.R.'s previous outcries to CPS resulted in closed cases because the Department could not substantiate them. These closed cases, he argues, bring her credibility as a witness into question. He also pointed out J.E.R.'s previous refusal to tell the truth in a prior investigation.

We note that even if we set J.E.R.'s outcries aside, the greater weight of the credible evidence creates a reasonable belief that Irish pushed J.E.R., twisted her arm, and hit her head with a phone charger. *See Hacker*, 389 S.W.3d at 864–65. First, Officer Barnes, who responded to J.E.R.'s babysitter's initial call, reported seeing "15 to 20 bruises on [J.E.R.'s] right arm that were about the size of quarters . . . ." Barnes also testified that some of the bruises looked fresh, while others were in various stages of healing. Second, Pardo, a registered nurse with twenty-four-years of experience treating abused children, testified that she performed a body surface examination of J.E.R. and

6

found twenty-six different injuries on the child, most of which were bruises. The bruises on her body and right arm supported the State's allegation that Irish pushed his daughter down and twisted her right arm, and the bruises on her temple supported the State's contention that Irish hit his daughter on the head. The physical findings support the State's allegations in its motion to adjudicate with more than a preponderance of the evidence. *See id*.

In light of the foregoing evidence, we conclude that the trial court's findings of true were supported by a preponderance of the evidence. Therefore, we overrule Irish's sole issue on appeal.

## IV.    CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
22nd day of July, 2021.

7